Adrian **HADLEY**, Appellant,

v.

**CITIZEN DEPOSIT BANK**, Appellee.

No. 2004–CA–000670–MR.

Court of Appeals of Kentucky.

July 8, 2005.

Willard Paxton, Princeton, Alan C. Stout, Marion, KY, for appellant.

James B. Brien, Jr., Mayfield, Robert Spragens, Jr., Lebanon, KY, for appellee.

Before HENRY and VANMETER, Judges; MILLER, Senior Judge.[1]

## OPINION

HENRY, Judge.

Adrian Hadley appeals from the Adair Circuit Court's entry of summary judgment in favor of Citizen Deposit Bank on a counterclaim and an amended counterclaim filed by Hadley against the bank. We affirm.

Wallace and Adrian Hadley married in 1959 and, for over twenty-five years, lived in Louisville and worked for Standard Oil/Chevron. In 1985, the Hadleys retired from Chevron, drew out their retirement benefits, relocated to Graves County, Kentucky, and purchased what was then the Heath Oil Company. The Hadleys operated that business as the Hadley Oil Company until selling it in 1998. They then relocated to the Adair County property that is part of the subject matter of this litigation. The Hadleys maintained a joint bank account at Citizen Deposit Bank that was used by various businesses in which the couple became involved both before and after their oil company was sold.

In April 1998, in order to secure a line of credit in the amount of $300,010.00 with Citizen Deposit Bank, Wallace delivered to the bank a real estate mortgage covering the Hadleys' Adair County farm and residence property. The mortgage purported to contain the notarized signatures of both Wallace and Adrian. The bank subsequently obtained from attorney Marshall Loy an opinion letter affirming the bank's status as a superior lienholder.

In the fall of 1998, Adrian learned about the mortgage purporting to contain her signature and called the bank. She denied ever having signed the mortgage or even

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110.(5)(b) of the Kentucky Constitution and KRS 21.580.

knowing anything about it, and asked what could be done to remove her name from the mortgage. This issue was never resolved to the satisfaction of both parties. When Adrian confronted Wallace about what had happened, he admitted that he borrowed the money in order to finance drug deals. Wallace would later deed his one-half interest in the real property in question to Adrian in February 1999. Adrian would then transfer the interest to her limited partnership by deed on December 14, 2000.

Also in February 1999, Adrian was notified by Ernest Lee Williams, the president of Citizen Deposit Bank, that Wallace had written two checks (totaling approximately $125,000.00) on the Hadleys' joint bank account, the balance of which was insufficient to cover the checks. The bank took the position that Wallace and Adrian, as joint owners and depositors on the account, were both responsible to the extent that these potential overdrafts were honored. On April 5, 1999, Adrian executed a promissory note that effectively covered the overdrafts on the joint account. Wallace was not asked to sign the note. The note became due in March 2000 and was paid by Adrian.

On August 28, 2001, Citizen Deposit Bank brought suit on the mortgage, and various other promissory notes executed by Wallace, to recover debts owed. The bank included Adrian as a party-defendant because: (1) her purported signature, properly notarized, appeared on the mortgage; (2) she was the spouse of Wallace Hadley; (3) she owned an interest in the property as of the date of the mortgage; and (4) she, and later her limited partner-

ship, had, subsequent to the making of the mortgage, become succeeding owners of the property in question. Citizen Deposit Bank now acknowledges in its brief that Wallace had apparently arranged for Adrian's signature to be forged on the mortgage and had procured an unlawful notary certificate attesting to this fraudulent signature.[2]

On October 2, 2001, Adrian filed an answer and counterclaim, and a cross-claim to the action filed by Citizen Deposit Bank. In her answer and counterclaim, Adrian again denied executing the mortgage, and asserted that the mortgage was procured by fraud. She also stated that she had obtained record title to the real property in question from Wallace Hadley by deed dated February 26, 1999. She further alleged that the bank was attempting to enforce a void and fraudulent mortgage.

On April 4, 2002, the trial court entered an order, on motion of Citizen Deposit Bank, granting partial summary judgment to the bank as to its claims against Wallace Hadley. The court specifically found that the bank was entitled to recover on promissory notes totaling over $417,000.00, and it adjudged that the bank had a first and superior lien upon the real property that was the subject of the April 1998 mortgage. The court noted, however, that this lien did not affect Adrian Hadley's one-half interest in the property, but only covered Wallace's one-half interest. The trial court further held that its order only pertained to the claims against Wallace, and that all remaining claims were reserved for future adjudication.

Adrian attempted to appeal from this order, but this court declined to entertain

---

**2.** The bank further notes that because of this fact, the undivided one-half interest in and to the subject real estate that Adrian owned at the time the mortgage was made and delivered remains untouched, and the Adair Circuit Court ultimately directed the judicial sale of only the undivided one-half interest in the property owned by Wallace at the time he executed the mortgage.

the appeal because the partial summary judgment was deemed to be interlocutory. Adrian also sought a writ of prohibition from this court, pursuant to CR [3] 76.36, that would prohibit the trial court from ordering the sale of her property; however, this court ruled that Adrian was not entitled to extraordinary relief, and that her remedy was to instead file a notice of appeal within thirty (30) days of the trial court's entry of an order of sale. On May 6, 2002, the trial court entered an order of sale as to Wallace Hadley's one-half interest in the real property in question and this interest was ultimately sold. The sale was confirmed in a September 24, 2002 order. Neither Adrian nor Wallace attempted to appeal from either of these orders.

On October 16, 2002, Adrian filed an amended counterclaim again alleging that Citizen Deposit Bank was attempting to enforce a void and fraudulent mortgage and also alleging for the first time that the bank fraudulently induced her to execute the promissory note to cover the $125,000.00 overdraft on the Hadleys' joint checking account.

On March 4, 2004, the trial court entered an order granting summary judgment to Citizen Deposit Bank as to the counterclaim and amended counterclaim filed by Adrian and her limited partnership. The court generally found that there was no genuine issue of material fact as to these claims and that the bank was entitled to summary judgment as a matter of law, but it gave no other specific justification. No legal precedent or authority was cited in the judgment. Adrian's post-judgment motions were denied. This appeal followed.

 The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers*, 882 S.W.2d 117, 120 (Ky.1994); CR 56.03. "The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App.2001), citing *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480–82 (Ky.1991); *Leslie v. Cincinnati Sub–Zero Products, Inc.*, 961 S.W.2d 799, 804 (Ky.App.1998). "The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis*, 56 S.W.3d at 436, citing *Steelvest*, 807 S.W.2d at 482; *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky.1992); *Hibbitts v. Cumberland Valley Nat'l Bank & Trust Co.*, 977 S.W.2d 252, 253 (Ky.App.1998). The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Steelvest*, 807 S.W.2d at 480. The Kentucky Supreme Court has held that the word "impossible," as set forth in the standard for summary judgment, is meant to be "used in a practical sense, not in an absolute sense." *Lewis*, 56 S.W.3d at 436, citing *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky.1992); *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724 (Ky.1999). "Because summary judgment

---

3. Kentucky Rules of Civil Procedure.

involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Id.,* citing *Scifres,* 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.,* 997 S.W.2d 497, 498 (Ky.App.1999); *Morton v. Bank of the Bluegrass and Trust Co.,* 18 S.W.3d 353, 358 (Ky.App.1999).

While Adrian's arguments on appeal are somewhat difficult to sort out it appears that she has two primary points of contention: (1) summary judgment was inappropriate because there was evidence that Citizen Deposit Bank knew that Adrian's signature was forged; accordingly, the bank should be liable for trying to enforce a mortgage that it knew to be void; and (2) summary judgment was inappropriate because Citizen Deposit Bank made the fraudulent representation to her that Adrian was jointly liable for any overdrafts made by Wallace from the couple's joint account.

As an initial matter, we are compelled to address the fact that Adrian's notice of appeal and introduction to her brief address two separate summary judgment orders entered by the trial court: (1) the April 4, 2002 partial summary judgment order adjudging that Citizen Deposit Bank had a first and superior lien upon the real estate that was the subject of the April 1998 mortgage; and (2) the March 4, 2004 order dismissing Adrian's counterclaim and amended counterclaim. This is despite the fact that the argument section of Adrian's brief only addresses the March 4, 2004 order.

While, as a panel of this court previously held, the April 4, 2002 partial summary judgment order was not a final and appealable judgment under CR 54.01 or 54.02, we note from the record that the trial court explicitly made reference to this order in its May 6, 2002 order of sale and cited it as a basis for entering that order. There is authority for the proposition that an order of sale is a final order from which an appeal lies. In *Security Federal Sav. & Loan Ass'n of Mayfield v. Nesler,* 697 S.W.2d 136 (Ky.1985), our Supreme Court specifically held that a "judgment holding that the purchase of land was subject to a lien and decreeing a sale of the land to satisfy that debt is a final order from which an appeal lies." *Id.* at 138, citing *May v. Ball,* 108 Ky. 180, 56 S.W. 7 (1900). The Supreme Court further noted that an "order of sale which directs a disbursement of the proceeds after payment of costs definitely is a final and appealable order." *Id.,* citing *Newsom v. Johnson,* 255 S.W.2d 33 (Ky.1953). The Supreme Court also concluded that an "order which orders property sold but does not include the magic words of CR 54.02 'there is no reason for delay,' or 'this is a final order,' is still a final and appealable order." *Id.,* citing *Alexander v. Springfield Production Credit Assn.,* 673 S.W.2d 741 (Ky.App. 1984).

In her petition for extraordinary relief under CR 76.36, Adrian asked this Court to prevent enforcement of the trial court's order of sale, and she specifically acknowledged that it implemented the court's April 4, 2002 holding that Citizen Deposit Bank had a superior lien on Wallace's interest in the couple's property. However, this court expressly held that Adrian should have filed a notice of appeal within thirty (30) days of the order of sale rather than trying to obtain extraordinary relief. As we earlier noted, Adrian failed to file any notice of appeal from the order of sale or any other orders relating to the sale.

Consequently, we hold that Adrian is entitled to no relief from the trial court's partial summary judgment of April 4, 2002, as that judgment (as Adrian recognized)

was directly implemented by the court's May 6, 2002 order of sale. If Adrian sought relief from the trial court's conclusion that the bank had a superior lien, an appeal should have been taken from that order of sale.

■ In light of the fact that Citizen Deposit Bank has been adjudicated to have a legitimate lien on the Hadleys' real estate, we are now confronted with the issue of whether Adrian's counterclaim-that her rights were violated due to the bank's enforcement of a "void and fraudulent" mortgage when it knew that her signature was forged before seeking enforcement-remains viable and not subject to summary judgment. Adrian has provided us with absolutely no legal authority to support her stance that Citizen Deposit Bank's mortgage was entirely void and unenforceable, even as to Wallace, and that the bank should not have been able to obtain Wallace's one-half interest in the subject real estate even though there is no dispute that his signature was legitimate. Neither has she provided us with any other substantive argument to support her position, with the exception of a general assertion that "it was a question for the jury to decide whether or not the Bank was aware of this forged document." It is clear from the bank's brief that it has acknowledged that Adrian's signature was forged on the mortgage and, because of this fact, it did not attempt to recover Adrian's one-half interest in the subject real estate. Adrian has failed to provide us with any case law or other authority to establish why she is entitled to further relief or why the bank's actions were fraudulent or in bad faith.

■ Our courts have established that an alleged error may be deemed waived where an appellant fails to cite any authority in support of the issues and arguments advanced on appeal. *See Pierson v. Coffey,* 706 S.W.2d 409, 413 (Ky.App.1986).

"[W]ithout any argument or citation of authorities, [an appellate] [c]ourt has little or no indication of why the assignment represents an error." *State v. Bay,* 529 So.2d 845, 851 (La.1988). It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here. *See, e.g., Doherty v. City of Chicago,* 75 F.3d 318, 324 (7th Cir.1996) (citations omitted); CR 76.12(4)(c)(v). Accordingly, we hold that Adrian is not entitled to relief as to this issue.

Adrian's second contention is that the trial court improperly entered summary judgment as to her amended counterclaim pertaining to the promissory note that she executed to cover Wallace's overdrafts. She particularly asserts that Citizen Deposit Bank fraudulently induced her to execute the promissory note for no consideration and that she was not liable for payment under KRS 355.4–401(2). The bank counters this assertion by arguing that Adrian failed to present enough evidence of fraud to overcome the summary judgment threshold, and that KRS 355.4–401(2) does not prohibit charging one participant in a joint account for an overdraft by another participant in the same joint account.

■ To bring an action for fraud in Kentucky, the party claiming harm must establish six separate elements of fraud by clear and convincing evidence: 1) the existence of a material representation; 2) which is false; 3) which is known to be false or made recklessly; 4) which is made with inducement to be acted upon; 5) which is acted in reliance thereon; and 6) which causes injury. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky.1999), citing *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky.App. 1978). Accordingly, in order for Adrian to establish fraud on the part of the bank in

informing her that she was responsible for any overdrafts on her joint account with Wallace, not only must that representation be proven false, it must also be proven that the bank knew that the representation was false when it was made or that it was made recklessly.

Adrian cites KRS 355.4–401(1) and (2) in support of her position. Those provisions read as follows:

(1) A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.

(2) A customer is not liable for the amount of an overdraft if the customer neither signed the item nor benefited from the proceeds of the item.

Adrian relies in particular upon KRS 355.4–401(2), contending that since she neither signed the items creating the overdraft nor benefited from the proceeds of those items, she cannot be liable for those overdrafts. Accordingly, the argument goes, Citizen Deposit Bank committed fraud in telling her that she was responsible for them.

Our review of KRS 355.4–401 and the few cases citing this statute provides us with little assistance in addressing Adrian's contention. KRS 355.4–401 unfortunately does not directly address the issue of a non-drawing cosigner's liability for a joint account overdraft, and we have been unable to find any Kentucky case law that addresses this issue.

There are, however, a number of other jurisdictions that have addressed the issue, including some within the context of the Uniform Commercial Code ("UCC"), which is pertinent here given that KRS 355.4–401 is Kentucky's codified version of the UCC's section 4–401. Among these jurisdictions, the majority view appears to be that a non-drawing cosigner is not liable for an overdraft unless he or she participated in creation of the overdraft, received benefit from it, or in some way ratified it. *See* John D. Hodson, Annotation, *Non-drawing Cosignor's Liability For Joint Checking Account Overdraft*, 48 A.L.R.4th 1136 (1986); *see also First Tennessee Bank, N.A. v. Mungan*, 779 S.W.2d 798 (Tenn.Ct.App.1989). However, as noted by Citizen Deposit Bank in its brief, there is case law holding that a cosigner of a joint business checking account was liable for overdrafts of the account, despite the fact that she had no ownership interest in the business and was a signatory on the account only as a matter of convenience. *See Bremen Bank & Trust Co. v. Bogdan*, 498 S.W.2d 306 (Mo.Ct.App.1973); *see also Pacenta v. American Savings Bank*, 195 Ill.App.3d 808, 142 Ill.Dec. 535, 552 N.E.2d 1276 (1990).

Which position is actually the "correct" one is not of primary importance here, particularly given that Adrian has already made good on the overdraft in question. We do note, however, that the "majority" opinion appears to be the one more commensurate with the language of KRS 355.4–401(2). We mention the differences in perspective only to emphasize that the matter is by no means a settled one; indeed, Kentucky courts have not explicitly adopted either position. Consequently, it is difficult to see how Adrian could be successful in a fraudulent misrepresentation claim that revolves around this very issue.

First, it is questionable as to whether or not the representation that Adrian was responsible for Wallace's overdrafts, when made, was false, given that Kentucky law is unclear on this point. Second, even assuming that the bank's position would

ultimately prove to be legally "incorrect," Adrian would then face the task of establishing that the bank adopted this position in a reckless manner or knowing that it was false. We struggle to see how this could be done under the current unsettled state of the law, particularly when looking back in "hindsight," as we must do here. Given that Adrian has provided us with nothing else to support her position that she was not liable for a joint account overdraft (for example, the couple's agreement with the bank in starting the account), we must conclude that the trial court did not err in awarding Citizen Deposit Bank summary judgment.

The judgment of the Adair Circuit Court is therefore affirmed.

ALL CONCUR.