RENDERED: MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-0316-MR

LAURA HUFFMAN, EXECUTRIX OF
THE ESTATE OF SIMON M.
VANDERPOOL AND SANDRA
VANDERPOOL                                                          APPELLANTS


v.
APPEAL FROM WHITLEY CIRCUIT COURT
HONORABLE DANIEL BALLOU, JUDGE
ACTION NO. 02-CI-00371


K. PETROLEUM, INC.                                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND GOODWINE,
JUDGES.

CALDWELL, JUDGE: Laura Huffman, Executrix of the Estate of Simon M.

Vanderpool, and Sandra Vanderpool (collectively, "the Vanderpools") appeal from

a summary judgment granted in favor of K. Petroleum, Inc. ("KPI"). We affirm.

# FACTS

This is the third appeal filed in this Court from the same trial court action originally filed by KPI.[1] According to the complaint, Sandra and Simon Michael "Mike" Vanderpool had allegedly taken possession of property under a land contract in 2002 and interfered with KPI's rights under an oil and gas lease on the property. In the first appeal, we reversed a judgment upon a jury verdict awarding the Vanderpools $217,980.24 in compensatory damages on their trespass counterclaim.[2]

In the second appeal, we affirmed the trial court's granting a directed verdict on liability in favor of the Vanderpools on their trespass counterclaim based on KPI's failure to offer a written oil and gas lease.[3] But we reversed the jury's award of damages[4] – a total of $217,930.24 consisting of $27,241.28 in

---

[1] *See K. Petroleum, Inc. v. Vanderpool*, No. 2012-CA-000859-MR, 2014 WL 1881913 (Ky. App. May 9, 2014); *K. Petroleum, Inc. v. Vanderpool*, Nos. 2017-CA-001416-MR and 2017-CA-001701-MR, 2019 WL 2713078 (Ky. App. Jun. 28, 2019). *See also Vanderpool v. K. Petroleum, Inc.*, No. 2015-SC-000106-MR, 2015 WL 6587198 (Ky. Oct. 29, 2015) (reversing Kentucky Court of Appeal's granting of writ concerning KPI's request for restitution of about $45,000 in garnished funds following resolution of first appeal).

[2] Our unpublished opinion in the first appeal appears to have a typographical error as it states the jury's award was $217,**890**.24. 2014 WL 1881913, at *1. However, the jury award from the first trial was $217,**980**.24 based on our review of the record. (Record of Appeal, "R.," p. 565.) According to the trial court's instructions in the first trial, $217,980.24 was the maximum amount the jury could award in compensatory damages for the trespass. The jury in the first trial did not award punitive damages.

[3] 2019 WL 2713078, at *2-3.

[4] 2019 WL 2713078, at *3.

compensatory damages for the value of the natural gas taken during the trespass plus $190,688.96 in punitive damages.[5] We concluded the defendants were not entitled to punitive damages and the trial court's jury instructions about the measure of damages were palpably erroneous.

We remanded for a new trial on damages, directing the trial court's attention to guidance about the measure of damages for trespass to mineral estate cases in *Harrod Concrete and Stone Company v. Crutcher*, 458 S.W.3d 290 (Ky. 2015):[6]

> the proper measure of damages in all innocent trespass cases is the value of the mineral after extraction, less the reasonable expenses incurred by the trespasser in extracting the mineral. . . .
>
> Where the trespass has been determined to be willful, we continue to maintain that the measure of damages is the reasonable market value of the mineral at the mouth of the mine/well, without an allowance of the expense of removal. This approach has been consistently applied in Kentucky and serves as a sufficient financial penalty for the wrongdoing of the trespasser, thus obviating the need for additional punitive damages. . . . Our holding applies equally to fugacious and non-fugacious minerals.[7]

---

[5] 2019 WL 2713078, at *1.

[6] 2019 WL 2713078, at *3.

[7] A *fugacious mineral* is defined as: "A mineral whose liquid or gaseous nature permits it to move from place to place in response to pressure differentials and rock permeability. Oil and natural gas are fugacious minerals."

*Id*. at 296-97.

Upon remand, the parties engaged in some additional discovery efforts. KPI contended that the Vanderpools failed to timely respond to its discovery requests – especially requests related to the amount of damages they were claiming. On January 3, 2022, the trial court granted KPI's motion to compel discovery and ordered the Vanderpools to respond to KPI's discovery requests within 20 days.

Mike Vanderpool passed away on or about January 7, 2022. Laura Huffman, the executrix of his estate, filed a Suggestion of Death shortly thereafter. She also filed a motion to substitute herself in his stead.[8]

Meanwhile, KPI filed a motion for discovery sanctions in late January – noting the Vanderpools had still not responded to its discovery requests despite service of the discovery requests over seventy-five days prior and the court's January 3 order requiring the filing of answers within twenty days. It requested sanctions available under civil rules regarding discovery. It further claimed that

---

*Glossary Of Oil And Gas Terms*, THE CENTER FOR AMERICAN AND INTERNATIONAL LAW https://www.cailaw.org/media/files/OP/ConferenceMaterial/2016/benchbar/glossary-oil-gas.pdf. (Last accessed Apr. 17, 2023).

[8] Although we did not see a written order granting the motion for substitution in the record, the trial court apparently granted this substitution motion at some point as Huffman's counsel filed pleadings on her behalf in the written record, the trial court referred to Huffman as executrix of the estate as one of the counterclaimants in its order granting summary judgment, and Huffman's counsel was listed on the distribution list of this order.

without the requested discovery, KPI's ability to defend against the trespass counterclaim was prejudiced.

Shortly thereafter, KPI also filed a motion for summary judgment. It attached to its motion an affidavit of a KPI official which it asserted established that the market value of the gas extracted over the 2002-2005 trespass period – without an allowance for removal expenses – was $35,389.27. KPI's motion also noted documentation in the trial court record that the Vanderpools had previously received about $45,000 in garnished funds. Therefore, KPI claimed, the Vanderpools could not recover any more even if the trespass was willful.

The Vanderpools filed a response to the motions for summary judgment and sanctions,[9] stating that their answer to interrogatories about the damages claimed was obvious – $217,930.24 in damages based on engineer Jon Hall's deposition testimony. Their response claimed this same amount was awarded by two juries[10] and contended Hall testified to this being the amount of damages. They asserted that a jury should resolve the question of damages and

---

[9] Prior to the filing of a joint response on behalf of both Sandra Vanderpool and Mike Vanderpool's estate, Sandra Vanderpool and Laura Huffman (as Executrix of Mike Vanderpool's estate) had also filed separate responses to the motions for summary judgment and sanctions. But neither side makes any arguments on appeal related to these separate responses.

[10] The actual amount of damages awarded by the first jury was $50 higher than the amount awarded by the second jury – $217,980.24 versus $217,930.24 – perhaps due to typographical error. Nonetheless, the total awards from both juries were very similar.

suggested there was a factual dispute based on the approximately $35,000 figure mentioned in the affidavit versus the $217,000 plus figure mentioned in Hall's testimony.

KPI argued in its reply that the Vanderpools were not entitled to the $217,000 plus in damages they were previously awarded after prior trials, especially since the Court of Appeals, in its last opinion in this case, stated the wrong measure of damages had been applied. It claimed Hall's testimony did not address the value of the gas actually extracted during the time period at issue. Instead, it asserted that Hall testified about the projected value of gas production lost by KPI after its ouster from the property.

KPI further noted the Vanderpools' failure to respond to requested discovery about the amount of damages claimed. KPI asserted that it had produced evidence of the market value of the gas extracted. And further asserted the Vanderpools failed to offer or identify any evidence of the value of the gas extracted during the trespass period – despite their bearing the burden of proof on their counterclaim.

Following a February 2022 hearing,[11] the trial court granted KPI's summary judgment motion. It recognized that the Vanderpools argued that Jon Hall's deposition testimony supported their recovery of the amount previously

_____

[11] It was noted at this hearing that Mike and Sandra Vanderpool had divorced prior to his death.

awarded by the last jury. But the trial court pointed out the Court of Appeals had reversed and remanded with instructions to apply a different standard of damages.

The trial court also stated the KPI official's affidavit referred to records of actual natural gas production which had been introduced as exhibits at previous trials. And it construed the affidavit as setting forth the actual market value of the gas produced during the relevant time period as $35,389.27 – without an allowance for removal expenses. It further stated the Vanderpools had failed to produce or identify any alternative valuation and noted their failure to respond to requests for discovery of the amount of damages being claimed.

Furthermore, in its order the trial court agreed with KPI that Jon Hall's testimony "does not in any way address the market value of the mineral actually extracted" by KPI as a trespasser or indicate what the value of the natural gas extracted was.

The trial court concluded that even assuming the trespass was willful, the Vanderpools could recover a maximum of $35,389.27 based on the affidavit. And, in light of the over $45,000 in garnished funds they received in 2012, the Vanderpools had already received more than the maximum amount they could possibly recover under the appropriate measure of damages. So, it granted summary judgment for KPI. It further declared the order was final and appealable with no just reason for delay existing.

The Vanderpools filed a timely appeal. On appeal, they argue there were genuine issues of material fact regarding damages based on evidence of record – namely, Hall's deposition testimony versus the KPI official's affidavit. They contend the summary judgment was erroneously granted.

## ANALYSIS

**The Vanderpools' Brief Fails to Fully Comply with Appellate Briefing Rules**

As KPI notes in its Appellee brief, the Vanderpools' brief fails to fully comply with Kentucky appellate briefing rules – for example, it lacks references to specific pages of the written trial court record. We likewise note the Vanderpools' brief's lack of a preservation statement with references to the record showing if and how appellate issues were raised to the trial court. *See* RAP[12] 32(A)(4); and former CR[13] 76.12(4)(c)(v) (in effect at the time of briefing).

Failure to comply with appellate briefing rules can result in severe consequences. For example, briefs can be stricken for substantial failure to comply with appellate briefing rules. RAP 31(H)(1); former CR 76.12(8)(a). And failure to provide a statement identifying how an issue was raised to the trial court and therefore preserved for our review can affect the standard of review employed,

---

[12] Kentucky Rules of Appellate Procedure.

[13] Kentucky Rules of Civil Procedure.

-8-

sometimes resulting in an issue being reviewed only for palpable error resulting in manifest injustice. *See, e.g.*, *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021); *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 377 (Ky. App. 2018); CR 61.02.

Despite the deficiencies of the Appellant brief, we decline to strike it. And because it is fairly evident from the record that the Appellants presented to the trial court and preserved for our review the basic argument that there were genuine issues of material fact on damages, we do not review this issue solely for palpable error resulting in manifest injustice. Nonetheless, we will not scour the record to look for errors never pointed out or argued by the Vanderpools. Furthermore, we strongly encourage counsel to make a better effort to comply with appellate rules in the future.

**Summary Judgment Standards and Standard of Review**

According to our Supreme Court, we must review the trial court's grant of summary judgment under CR 56.03 *de novo*, aware of the trial court's duty to view the evidence and resolve all doubts in favor of the non-moving party:

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require

-9-

findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (internal quotation marks and citations omitted). Nonetheless, even under this non-deferential standard of review, we conclude there is no reason to reverse the trial court's grant of summary judgment based on the arguments made by the Vanderpools in this appeal.

**Grant of Summary Judgment Not Reversible Error**

The gist of the Vanderpools' appellate argument is that there is a genuine issue of material fact on the value of the natural gas extracted during the trespass period. As the Vanderpools correctly note, we last remanded this case to determine damages under the correct measure of damages – which requires first determining the value of the natural gas extracted from the Vanderpools' property during the trespass.

According to the Vanderpools' brief:

The fact to be determined is the value of the natural gas. And there are two values in evidence. There is the self-serving, unsupported affidavit of the Appellee [KPI] that the value was $35,389.27. And, there is the testimony of Petroleum Engineer Jon Hall, who was actually retained by and testified for the Appellee, that the value is $217,930.24. How then, is that not a question of fact? It is either one figure or the other, or somewhere in between.

-10-

Other than citing a case and court rule to generally argue summary judgment should not be granted unless there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law,[14] the Vanderpools do not cite supporting authority or further develop their arguments in their appellate brief.

For example, they do not specifically identify or argue any error in the trial court's acceptance of KPI's assertion that the affidavit stated the value of the gas extracted in the trespass period to be $35,389.27. We may assume alleged errors are waived if no supporting authority is provided and we are not obligated to "research or construct" a party's arguments. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

The Vanderpools also generally argue that Jon Hall's testimony shows that the value of the natural gas extracted during the trespass period was $217,930.24. But they do not specifically discuss or allege any error in the trial court's construing Hall's testimony as not actually discussing the value of the gas actually extracted in the trespass period.

---

[14] *See* last paragraph of argument on page 3 of Appellant Brief:

> This Court stated the obvious in interpreting CR 56.03 in *Beasley v. Trontz*, 677 S.W.2d 891 (Ky. App. 1984): "Summary judgment should be granted only in the absence of a genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." Since there was no absence of a genuine issue of material fact as to the value of the natural gas, the summary judgment granted by the trial court was erroneous.

According to the Vanderpools' brief, on page 15 of Hall's deposition, Hall was asked by the Vanderpools' counsel whether $217,930.24 was his opinion of the value of the natural gas for the trespass period (from January 2002 through August 2005) and Hall affirmed it was. KPI contends in its brief that Hall "testified about the projected value of gas production lost by KPI after being ousted from the property, not the value of gas actually taken." The Vanderpools did not respond to this argument as they did not file a reply brief.

We have examined Hall's deposition transcript ourselves and quote portions of pages 14 and 15 of Hall's 2015 deposition – in which he was asked about the $217,930.24 figure in his report by the Vanderpools' counsel:

> **Q. Okay. Ok, now I've taken the total, you call it lost revenue, but I've taken that column, if you look at the second page there. And I've got a number down and it's $217,930.24, and then the next page I've got a tape where I've added all those up.**
>
> A. Okay.
>
> **Q. And assuming the accuracy of the tape and since we did this before and it was the same amount, is that your opinion, sir, as to the value of the gas from the Vanderpool property for the period of January of 2002 through August of 2005?**
>
> A. It looks to be a reasonable value for that period of time.

(Jon Hall deposition transcript, pages 14-15, R., p. 1363.)

In other words, Hall states $217,930.24 is a reasonable value for the gas from the Vanderpools' property over the trespass period in response to a question about **lost revenue** figures on a chart." The Vanderpools' counsel does not specifically ask about the value of the gas **actually extracted** from the Vanderpools' property during the 2002-2005 trespass period.[15]

So, the trial court correctly concluded that evidence from Hall's deposition testimony did not provide the value of gas actually extracted during the trespass – which was needed to determine damages under the correct measure of damages. *See Crutcher*, 458 S.W.3d at 296-97. Admittedly, the two prior jury awards are for about the same amount ($217,000 plus) discussed on that cited portion of Hall's deposition testimony. However, Hall does not specifically argue or cite supporting authority indicating that these awards actually reflect the value of the natural gas extracted during the trespass period – especially since we reversed the last jury award expressly because the jury had not been correctly instructed on how to determine damages.

Besides Hall's testimony, the Vanderpools have not identified any other evidence in the record about the value of the gas extracted from their

[15] Similarly, on page 10 of his deposition, in response to KPI's counsel's question about what work Hall was asked to do regarding the lawsuit, Hall replied that he was asked to project natural gas production from the three wells at issue during the relevant time frame and to place a value on that production. And on page 12, KPI's counsel inquired whether Hall had determined the value of **lost** natural gas production from March 2005 until April 2015. (R., p. 1362.)

property during the trespass period other than the affidavit filed by KPI. Despite generally referring to the affidavit as self-serving and unsupported, the Vanderpools have not specifically discussed any problems with it or cited any authority about why it should be disregarded. They have not even specifically argued that the trial court erred in accepting KPI's assertion that the affidavit showed the value of the gas extracted during the trespass period to be $35,839.27.

In short, we discern no reason to reverse the trial court's grant of summary judgment based on the Vanderpools' arguments.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the trial court judgment.

ALL CONCUR.


BRIEF FOR APPELLANTS:

Darrell L. Saunders
Corbin, Kentucky

James H. Wren
Williamsburg, Kentucky

BRIEF FOR APPELLEE:

Scott M. Webster
London, Kentucky