RENDERED: FEBRUARY 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1189-MR

ROBERT ARNOLD                                                 APPELLANT

v.                  APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANN BAILEY SMITH, JUDGE
ACTION NO. 23-CI-007723

UNIVERSITY MEDICAL CENTER,
INC. D/B/A U OF L HEALTH; EC
OPCO MOUNT WASHINGTON, LLC,
D/B/A INSPIRATION OF MOUNT
WASHINGTON, A/K/A ELMCROFT
OF MOUNT WASHINGTON;
JEFFREY A. BAKER, MD;
LOUISVILLE ALZHEIMER'S
INVESTORS, LLC, D/B/A THE
LANTERN AT MORNING POINTE
OF LOUISVILLE; TARYN MORAN,
RN, SANE; TYLER BAYERS, MD;
AND UNKNOWN DEFENDANTS
WHO ARE AGENTS/EMPLOYEES OF
ELMCROFT                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  Robert Arnold ("Dr. Arnold") appeals from the dismissal of his claims against the Appellees on grounds including the statute of limitations. We affirm.

**FACTS**

On December 14, 2023, Dr. Arnold filed a lawsuit against Appellees: 1) EC Opco Mount Washington, LLC, d/b/a Inspirations of Mount Washington, a/k/a Elmcroft of Mount Washington ("Elmcroft"), 2) Louisville Alzheimer's Investors, LLC d/b/a The Lantern at Morning Pointe of Louisville ("The Lantern"), and 3) University Medical Center, d/b/a UofL Health—University of Louisville Hospital and Jeffrey A. Baker, MD; Tyler Bayers, MD; and Taryn Moran, RN, SANE (collectively, "the U of L Defendants").

Dr. Arnold's complaint[1] asserted claims relating to investigations of allegations that Dr. Arnold had abused or assaulted his wife, Betty Arnold ("Mrs. Arnold"), while she resided at Elmcroft and then The Lantern.  He alleged that Mrs. Arnold was diagnosed with dementia in early to mid-2021 and was placed at Elmcroft.  He further alleged the Cabinet for Health and Family Services ("Cabinet") had investigated allegations of abuse made while he was visiting his wife at Elmcroft, but the Cabinet determined that these allegations were

---

[1] Dr. Arnold amended his complaint twice.  Like the parties and the trial court, we focus our attention on the allegations in the Second Amended Complaint, which we refer to simply as "the complaint" in this Opinion.

unsubstantiated. The complaint provided no specific dates regarding the Cabinet's investigation.

Dr. Arnold also alleged that in late March 2022, Mrs. Arnold had been transferred to The Lantern and she was seen at the University Hospital emergency room due to suspicions that she had been physically or sexually assaulted by her husband. He further alleged that following Mrs. Arnold's late March 2022 emergency room visit, the Arnolds' adult daughters had reported their suspicions of abuse to Louisville police. He stated that the criminal investigation concluded, with no charges filed against Dr. Arnold, on December 16, 2022.

Elmcroft, The Lantern, and the U of L Defendants (collectively, "the Appellees") all filed motions to dismiss based on the statute of limitations and other grounds.

The circuit court granted the motions to dismiss in an opinion and order. It concluded that a one-year statute of limitations applied to all of Dr. Arnold's claims against the Appellees—including claims for personal injury and medical negligence as well as any defamation claims. It rejected Dr. Arnold's argument that his lawsuit was timely filed because he did not know the full extent of his damages until the criminal investigation concluded.

Dr. Arnold filed a timely appeal. Further facts will be set forth as needed in our analysis.

First, we consider the effect of his appellant brief's lack of compliance with the Kentucky Rules of Appellate Procedure ("RAP") in several respects.

## ANALYSIS

### Dr. Arnold's Brief Fails to Fully Comply with Appellate Briefing Rules

As noted in the U of L Defendants' appellee brief, Dr. Arnold's appellant brief does not fully comply with RAP. For instance, the appellant brief provides no specific citations to pages of the written record or to any portion of a hearing videorecording. *See* RAP 32(A)(3)-(4); RAP 31(E)(3)-(4). Also, the opinion and order of dismissal from which the appeal stems was not placed "immediately after the appendix list so that it is most readily available to the court." RAP 32(E)(1)(a). And the index to the appendix to appellant's brief does not state where the appended items may be found in the record. RAP 32(E)(1)(d).

Moreover, the appellant brief does not "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." RAP 32(A)(4). And despite at least some RAP violations being pointed out in an appellee brief, Dr. Arnold did not file a reply brief correcting the deficiencies of his appellant brief.

Failure to comply with appellate briefing rules can result in serious consequences. For example, this Court has discretion to strike a brief and dismiss the appeal for substantial failure to comply with appellate briefing rules. RAP

10(B); RAP 31(H); *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153 (Ky. App. 2024).

Despite the failure to fully comply with our appellate briefing rules, we decline to strike the appellant brief or to dismiss the appeal. However, to the extent that Dr. Arnold's brief fails to show if and how the issues he raises on appeal were raised to the trial court and thus preserved for our review, we may review such issues solely for palpable error resulting in manifest injustice. *See id.* (citing *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021)).[2]

### Standards of Review

We review *de novo* (without deference) the trial court's granting Appellees' motions to dismiss based on failure to state a claim for which relief can be granted, *see* CR[3] 12.02(f), and on failure to timely file suit within the statute of limitations. *Shaw v. Handy*, 588 S.W.3d 459, 461 (Ky. App. 2019). Moreover, we keep in mind that CR 12.02(f) motions may be properly granted only if, accepting all of the plaintiff's allegations as true and drawing all reasonable inferences in the

---

[2] Based upon a Westlaw search, Kentucky appellate courts have not previously, explicitly found that Dr. Arnold's counsel failed to substantially comply with appellate briefing rules. Nonetheless, though we leniently decline to formally impose sanctions for the lack of full compliance with appellate briefing rules in this instance, we remind counsel that we are not obligated to be so lenient in the future. We direct counsel's attention to the Rules of Appellate Procedure and helpful resources, such as briefing checklists and a basic appellate handbook which may be accessed via our Court's website, https://www.kycourts.gov/Courts/Court-of-Appeals (last viewed Sep. 19, 2025).

[3] Kentucky Rules of Civil Procedure.

plaintiff's favor, "the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim[.]" *Id.* (quoting *James v. Wilson*, 95 S.W.3d 875, 883 (Ky. App. 2002)).

In other words, when ruling upon a CR 12.02(f) motion to dismiss for failure to state a claim: "the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *James*, 95 S.W.3d at 883-84.

With these standards in mind, we consider Dr. Arnold's argument on appeal that his claims were not time-barred because he did not know the full extent of his damages until the criminal investigation against him concluded. Although Dr. Arnold raises other arguments for challenging the trial court's dismissal of his claims against Appellees, we need not reach these additional arguments because the trial court properly dismissed his claims against Appellees as time-barred.

### Trial Court Properly Concluded that Dr. Arnold's Claims Against the Appellees were Time-Barred

The trial court concluded that Dr. Arnold's claims against all Appellees were time-barred. First, it determined that the one-year statute of limitations set forth in KRS[4] 413.140 applied. *See generally* KRS 413.140(1)(a)

---

[4] Kentucky Revised Statutes.

(personal injury); KRS 413.140(1)(d) (libel or slander); KRS 413.140(1)(e) (professional negligence including that of physicians and hospitals). Dr. Arnold has not challenged the trial court's determination that the one-year statute of limitations applied to all his claims against the defendants. However, he contends that his claims against the Appellees did not accrue until December 16, 2022 (the date the criminal investigation concluded).[5]

Specifically, he argues that he did not sustain an "irrevocable non-speculative injury" until the criminal investigation against him concluded. He quotes *Queensway Financial Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007):

> The "occurrence" limitation period begins to run upon the accrual of the cause of action. *Id.* The accrual rule is relatively simple: "'[A] cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred. . . . [T]he use of the word "occurrence" in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute.'" *Id.* at 730 (quoting *Northwestern Nat. Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)) (alterations in original). Basically, "a 'wrong' requires both a negligent act and resulting injury. *Damnum absque injuria*, harm without injury, does not give rise to an action for damages against the person causing it." *Id.* at 731. The difficult question

---

[5] Dr. Arnold's brief fails to provide a proper preservation statement with references to the record showing if and how this issue was preserved for our review as required by RAP 32(A)(4). However, it is evident that he raised this issue about when his claims accrued to the trial court based on its discussion of this issue in its opinion and order of dismissal.

when applying the rule is usually not whether negligence has occurred but whether an "'irrevocable non-speculative injury'" has arisen. *Id.* at 730 (quoting *Northwestern Nat. Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)).

We disagree with Dr. Arnold's argument that his claims did not accrue and that he suffered no "irrevocable non-speculative injury" until the criminal investigation concluded. Even assuming *arguendo* that the discovery rule applies to all his claims against the Appellees,[6] the trial court correctly rejected Dr. Arnold's argument that his claims did not accrue until he was able to determine the full extent of his damages, including fees for attorneys and expert witnesses, upon the conclusion of the criminal investigation.

---

[6] The discovery rule set forth at KRS 413.245 explicitly applies only to civil actions "arising out of any act or omission in rendering, or failing to render, professional services for others[.]" And it further requires that such actions "be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured."

As noted by the trial court, Kentucky law generally holds that a cause of action accrues upon the occurrence of an injury. *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 288 (Ky. App. 1998). Moreover, "it is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one year statute of limitations[.]" *Caslin v. General Elec. Co.*, 608 S.W.2d 69, 70 (Ky. App. 1980). Assuming the discovery rule applies: "A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Combs v. Albert Kahn Associates, Inc.*, 183 S.W.3d 190, 194-95 (Ky. App. 2006) (discussing application of discovery rule to cases involving exposure to toxic substances).

As the trial court aptly noted, binding precedent from our Supreme Court makes clear that "a final measure of damages" is not necessary for accrual of a claim. (Page 6 Opinion and Order Granting Motions to Dismiss, attached as Exhibit 2 to Appendix to appellant brief, citing *Wolfe v. Kimmel*, 681 S.W.3d 7 (Ky. 2023)). In *Wolfe*, a legal malpractice case, our Supreme Court overruled prior precedent "insofar as they hold that damages are irrevocable and non-speculative when a claimant knows the exact dollar amount in damages they incurred due to a defendant's negligence." 681 S.W.3d at 25.

Our Supreme Court clarified that, henceforth, for non-litigation legal malpractice claims, "the occurrence date limitation begins to run when negligence and damages have both occurred." *Id.* at 26. After having earlier noted that KRS 413.245 did not distinguish between legal malpractice claims and other professional malpractice claims, *id.* at 25, the court further stated: "for such a claim damages are considered irrevocable and non-speculative when the claimant is reasonably certain that damages will indeed flow from the defendant's negligence." *Id.* at 26.

For example, our Supreme Court held that the statute of limitation on plaintiff Wolfe's legal malpractice claims against defendant Kimmel began to run on the date that another attorney advised Wolfe of Kimmel's malpractice. *Id.* Our Supreme Court further explained that Wolfe's damages were irrevocable and non-

-9-

speculative as of that date because, according to the complaint, she had already received a cease and desist letter and had been sued, resulting in her incurring expenses and suffering emotional distress, when the other attorney advised her to settle the suit quickly since she would owe a lot of money due to Kimmel's incorrect advice. So, our Supreme Court concluded Wolfe "was therefore reasonably certain at that time that damages would indeed flow from Kimmel's negligence." *Id.* It further stated: "The discovery date limitation is not applicable in this case because there are no circumstances suggesting that the cause of action was not reasonably discoverable." *Id.* Therefore, Wolfe's action, filed eighteen months after the other attorney advised her of Kimmel's malpractice, was untimely filed. *Id.*

Plaintiff Wolfe had argued that her legal malpractice cause of action against Kimmel did not accrue and the statute of limitations did not start running until she settled the lawsuit against her and thus knew the full extent of her damages from attorney Kimmel's malpractice. *Id.* at 11. Attorney Kimmel disputed this assertion, arguing Kentucky law had never required full ascertainment of one's final damages before the statute of limitations started to run. *Id*. at 12.

Ultimately, our Supreme Court determined that the statute began running on Wolfe's legal malpractice claim against Kimmel on the date the other

attorney advised her of Kimmel's malpractice rather than the date—almost a year later—when she settled the lawsuit against her, thus ascertaining her the final measure of her damages. *See id*. at 25-26.

By analogy, Dr. Arnold was similarly not entitled to wait until he knew the full extent of his damages in defending against the criminal investigation before filing suit. His complaint alleges this criminal investigation was prompted by his daughters' reporting his suspected abuse of his wife to the police following her late March 2022 emergency room visit. And his complaint does not allege any circumstances which prevented him from discovering his causes of action against Appellees.

Moreover, even accepting the allegations of the complaint as true and construing the record in the manner most favorable to him, he did not allege, in the complaint, any wrongful conduct by any of the Appellees which occurred after late March 2022. Thus, the trial court did not err in dismissing his claims against the Appellees as barred by the statute of limitations—as we more specifically discuss regarding Elmcroft, The Lantern, and the U of L Defendants, respectively.

**No Reversible Error in Holding Claims Against Elmcroft to be Time-Barred**

Elmcroft points out that the complaint alleges that the criminal investigation stemmed from reports following Mrs. Arnold's visit to the emergency room during her residence at The Lantern—not from the Cabinet investigating

abuse allegations stemming from Dr. Arnold's visiting Mrs. Arnold at Elmcroft and finding these allegations unsubstantiated. Elmcroft also points out that the complaint itself does not provide any specific dates about the Cabinet investigation and simply alleges Dr. Arnold did not know the full extent of his damages until the criminal investigation concluded.

Like Elmcroft, the trial court took note of the lack of specific dates provided in the complaint regarding the Cabinet's investigation of allegations of abuse at Elmcroft and construed the complaint as indicating that abuse allegations were made during Mrs. Arnold's residency at Elmcroft. The trial court noted that Elmcroft stated Mrs. Arnold lived there from September 21, 2021, until December 3, 2021, in its motion to dismiss. The court also noted that Dr. Arnold did not dispute that his wife lived at Elmcroft only during this date range in his response to Elmcroft's motion to dismiss.[7]

Dr. Arnold did not argue in his appellant brief that the trial court erred in regarding Mrs. Arnold's residency dates at Elmcroft as undisputed. Nor did he file a reply brief to respond to the assertion in Elmcroft's appellee brief that any claims against it should have accrued, at the latest, by December 3, 2021, meaning

---

[7] Dr. Arnold has not argued that the trial court considered any matters outside the pleadings and thereby converted the motion for dismissal to a motion for summary judgment. *See, e.g.*, *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563 (Ky. App. 2017). Moreover, we decline to research or make any additional arguments for reversal on his behalf. *See generally Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

that Dr. Arnold's lawsuit was time-barred since it was not filed within one year of this date but was instead filed over two years after Mrs. Arnold left Elmcroft.

Instead, he has solely argued that the statute of limitations did not start running on his claims against all Appellees because he was not fully aware of all his damages until the criminal investigation against him concluded on December 16, 2022. Especially since he has not argued with citations to supporting legal authority that the trial court erred in its specific discussion of how his claims against Elmcroft were time-barred due to Mrs. Arnold's undisputably leaving Elmcroft in early December 2021,[8] we discern no reversible error in the trial court's dismissing his claims against Elmcroft as time-barred.

Even accepting as true the allegations in the complaint and construing the record in the light most favorable to Dr. Arnold, the trial court correctly determined that Dr. Arnold failed to state a claim upon which relief could be granted against Elmcroft because he could not prove any set of facts in which his claims against Elmcroft were not time-barred given that the original complaint was filed in mid-December 2023—two years after Mrs. Arnold left Elmcroft.

---

[8] *See generally Hadley*, 186 S.W.3d at 759 (noting alleged errors may be waived by failing to argue them with appropriate citations to supporting legal authority and further stating: "It is not our function as an appellate court to research and construct a party's legal arguments, and we decline to do so here.").

The factual allegations about Elmcroft in the complaint were that: 1) Mrs. Arnold was diagnosed with dementia in early to mid-2021 and went to live at Elmcroft, 2) that Dr. Arnold frequently visited her at Elmcroft, 3) that allegations of abuse were made against Dr. Arnold during a visit with his wife at Elmcroft resulting in a Cabinet investigation which ultimately found these allegations unsubstantiated, and 4) that Elmcroft employees (along with the Arnolds' daughters) "conspired to make these false accusations of abuse against Dr. Arnold" to tarnish his reputation. (Second Amended Complaint, Paragraphs 19-23, Record on Appeal ("R."), p. 209.)

Next, the complaint alleged that Mrs. Arnold was transferred to The Lantern, where allegations of abuse were made in late March 2022.

The section of the complaint entitled "Claims Against Elmcroft" provided no other dates and generally asserted that Elmcroft had, acting through its employees and/or agents, failed to properly investigate allegations that Mrs. Arnold was assaulted, failed to properly obtain her medication history (including the dates of prescriptions for medications), failed to properly examine Mrs. Arnold's alleged injuries, failed to properly diagnose Mrs. Arnold's condition, and falsely accused Dr. Arnold of physically or sexually assaulting his wife. (Second Amended Complaint, Paragraphs 110-113, R., p. 222.) Obviously, Elmcroft was not responsible for Mrs. Arnold's care after she moved out, and the complaint

specifically alleges in Paragraph 22 that allegations of abuse were made while Dr. Arnold was visiting his wife at Elmcroft. (R., p. 209.) In short, all allegations against Elmcroft plainly stem from the period when Mrs. Arnold resided at that facility.

In sum, even accepting the allegations of the complaint as true and reviewing the record in the light most favorable to Dr. Arnold, there are no allegations of any misconduct by Elmcroft after Mrs. Arnold departed from Elmcroft on December 3, 2021—much less any allegations of wrongdoing by Elmcroft after Mrs. Arnold's late March 2022 emergency room visit.

Therefore, the trial court properly determined that, even accepting the allegations of the complaint as true and construing the record in Dr. Arnold's favor, his claims against Elmcroft had accrued by early December 2021 and Dr. Arnold could not prove any set of facts showing that his claims against Elmcroft were not time-barred given his failure to file suit prior to mid-December 2023.

Next, we address the dismissal of claims against The Lantern based upon the statute of limitations.

### No Reversible Error in Holding Claims Against The Lantern to be Time-Barred

Regarding The Lantern, the complaint alleged that Mrs. Arnold had been transferred there on an unspecified date and remained there at present. The complaint further alleged that on March 25, 2022, Dr. Arnold picked her up from

The Lantern to go to lunch with family, and 2) that the Arnolds' adult daughters put a tracking device in Mrs. Arnold's purse that day which led them to allege that Dr. Arnold took Mrs. Arnold to a motel after lunch that day. The factual allegations also stated that 1) during Dr. Arnold's visit to see Mrs. Arnold at The Lantern the next day (March 26, 2022), 2) the adult daughters were waiting in the parking lot (unbeknownst to Dr. Arnold) and saw red spots on Mrs. Arnold's arms, face, and neck after Dr. Arnold left, 3) that the daughters made baseless allegations to The Lantern's staff that Dr. Arnold had physically or sexually assaulted Mrs. Arnold, 4) that The Lantern's staff "went along" with these allegations, and 5) that the daughters took Mrs. Arnold to the emergency room on March 26, 2022 after The Lantern's staff instructed them to do so. (Second Amended Complaint, Paragraphs 24-40, R., pp. 209-11.) The complaint further alleged that after the daughters took Mrs. Arnold to the emergency room on March 26, 2022, the daughters contacted police, resulting in a criminal investigation of Dr. Arnold.

The section of the complaint setting forth the claims against The Lantern stated that The Lantern, acting through its agents and employees, had failed to properly investigate allegations of assault, failed to obtain a thorough medication history, failed to properly examine Mrs. Arnold's alleged injuries, failed to properly diagnose her condition, and falsely accused Dr. Arnold of

-16-

physically or sexually assaulting Mrs. Arnold. (Paragraphs 114-17 of Second Amended Complaint, R., pp. 222-23.)

Even accepting the allegations of the complaint as true, the complaint did not contain any specific allegations about any misconduct by The Lantern (acting through its agents or employees) which occurred after the March 26, 2022, emergency room visit—especially since the complaint clearly alleges that it was the Arnolds' daughters, not Elmcroft, that contacted police about suspicions of abuse. Regarding The Lantern, the complaint alleges only that The Lantern's staff instructed the daughters to take their mother to the emergency room when the daughters informed The Lantern of their suspicions that Dr. Arnold had abused and/or assaulted Mrs. Arnold.

In sum, the complaint alleged nothing about the conduct of The Lantern (acting through its agents and employees), which occurred after The Lantern staff allegedly advised the Arnolds' daughters to take Mrs. Arnold to the emergency room on March 26, 2022. We discern no reversible error in the trial court's determination that Dr. Arnold's claims against The Lantern were barred under the one-year statute of limitations since the original complaint was not filed until December 14, 2023. Next, we address the dismissal of claims against the U of L Defendants as time-barred.

**No Reversible Error in Holding Claims Against the U of L Defendants Were Time-Barred**

As the U of L Defendants point out in their brief, the complaint alleges that it was the Arnold daughters, not the U of L Defendants, who contacted police following Mrs. Arnold's visit to the emergency room on March 26, 2022. And the complaint does not specifically allege any wrongful conduct by the U of L Defendants after this March 26, 2022, emergency room visit. Instead, the factual allegations regarding the U of L Defendants simply state that U of L staff "went along with the false allegations made against Dr. Arnold" by the Arnolds' daughters, and that Mrs. Arnold was seen in the emergency room on March 26, 2022, and examined by Drs. Baker and Bayers and Nurse Moran, who all allegedly wrongfully, mistakenly and/or falsely "determined that Betty Arnold had been physically and sexually abused by Dr. Arnold." (Second Amended Complaint, Paragraphs 41-48, R., pp. 211-12.) The complaint also specifically alleged that Dr. Baker, Dr. Bayers, and Nurse Moran's diagnoses "lacked any basis in fact" and were "utterly false and untrue" and fell below the acceptable standard of care for a doctor or nurse acting under the same or similar circumstances. (Second Amended Complaint, Paragraphs 43, 45, 48, R., p. 212.)

The complaint further alleged that each of the individual U of L Defendants (Drs. Baker and Bayers and Nurse Moran) had failed to properly investigate allegations of assault, failed to obtain a thorough medication history

-18-

with dates of prescriptions, failed to properly examine Mrs. Arnold's alleged injuries, and failed to properly diagnose her condition. And it asserted that when allegations of physical or sexual abuse had been raised, medical professionals should foresee that failure to properly investigate or get a thorough medication history as well as failure to properly examine and diagnose the patient could result in dire consequences for the person accused of assaulting the patient. (Second Amended Complaint, Paragraphs 98-109, R., pp. 220-22.) Moreover, it asserted that U of L Health was liable for these individual defendants' alleged actions pursuant to the principle of *respondeat superior*, which is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, BLACK'S LAW DICTIONARY (12th ed. 2024). But the complaint does not allege that any of the U of L Defendants had any contact with Dr. or Mrs. Arnold or engaged in any misconduct after the March 26, 2022, emergency room visit.

In sum, like the allegations of the complaint against Elmcroft and The Lantern, the complaint did not allege any conduct by the U of L defendants which occurred after Mrs. Arnold's March 26, 2022, emergency room visit. Thus, we discern no reversible error in the trial court's concluding that to the extent the complaint may have stated claims against these defendants for malpractice or personal injury or defamation, *see* KRS 413.140, such claims were time-barred

since the original complaint was not filed until December 14, 2023, and therefore, Dr. Arnold failed to state claims for which relief could be granted.

Further arguments raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.


ALL CONCUR.


BRIEF FOR APPELLANT:

Liddell Vaughn
Louisville, Kentucky

BRIEF FOR APPELLEE THE LANTERN:

Paul A. Dzenitis
Emily W. Newman
Tomsen F. Leonard
Louisville, Kentucky

BRIEF FOR APPELLEE ELMCROFT:

Jennifer M. Barbour
M. Katherine Ison
Louisville Kentucky

BRIEF FOR APPELLEES U OF L DEFENDANTS:

Joseph A. Wright
Louisville, Kentucky