RENDERED: MAY 10, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1028-MR

KENTUCKY STATE
POLICE/COMMONWEALTH OF
KENTUCKY                                                                    APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.             HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 19-CI-01246

SGT. KEVIN BURTON; LT. FRANK
CHAD TAYLOR; AND SGT. MIKE
GARYANTES                                                                   APPELLEES

AND

NO. 2022-CA-1108-MR

SGT. KEVIN BURTON; LT. FRANK
CHAD TAYLOR; AND SGT. MIKE
GARYANTES                                                          CROSS-APPELLANTS

CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.             HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 19-CI-01246

KENTUCKY STATE
POLICE/COMMONWEALTH OF
KENTUCKY                                                      CROSS-APPELLEE


OPINION AND ORDER
REVERSING AND REMANDING
AND DISMISSING CROSS-APPEAL

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

CALDWELL, JUDGE:  Kentucky State Police ("KSP") appeals from a judgment on a jury verdict in favor of Appellees Sgt. Kevin Burton ("Burton"), Lt. Frank Chad Taylor ("Taylor"), and Sgt. Mike Garyantes ("Garyantes"), collectively the appellees ("Appellees"), on their Kentucky Whistleblower Act claims.  We reverse and remand for a new trial due to erroneous jury instructions and dismiss the Cross-Appeal upon the Appellees'/Cross-Appellants' motion.

Appellees were employed at KSP Post 4 in Elizabethtown.  They filed suit against KSP in late 2019.  They alleged they were subjected to retaliation and reprisal for reporting their concerns about "irregularities and thefts of evidence from Post 4."  Specifically, their reports conveyed information they received which they perceived as indicating:  1) Sgt. Ryan Johnson ("Johnson") had taken evidentiary items from an open case from the evidence room for personal or family use; 2) that KSP forms regarding destruction of evidence had been improperly

-2-

filled out, and; 3) that there was a cover-up rather than a proper investigation of Johnson's actions.

Appellees alleged that Captain Daniel White ("White"), who had recently become Post 4's Commander, told them and others to be quiet about this matter and threatened to transfer those who persisted in discussing the matter – especially outside the post. They also claimed they were retaliated against for reporting the matter to the Commonwealth's attorney and to KSP officials, including those in Frankfort. In their view, retaliation was taken in the forms of threats of transfer, an internal affairs inquiry into Garyantes' actions in an earlier incident, and constructive discharge leading to Burton's retirement.

On the other hand, KSP asserts it investigated the evidence room issues, notified the Commonwealth's attorney who declined to prosecute, and disciplined Johnson with a suspension. It also maintains that White told Appellees and others the matter was being investigated and simply called for quelling rumors, gossip, and unnecessary workplace drama during the investigation. It asserts its investigation showed all evidence was properly accounted for despite unintentional errors such as a form mistakenly being filed under the wrong case number.

The case proceeded to trial. KSP moved for a directed verdict, which the trial court denied. After the close of the evidence, the jury returned verdicts in favor of the plaintiffs. KSP moved for a new trial and/or for a judgment

notwithstanding the verdict ("JNOV"). The trial court denied these motions and KSP filed a timely appeal.

KSP argues on appeal that the trial court's judgment must be reversed and remanded for a new trial due to, in its view: error in admitting evidence, insufficiency of the evidence, erroneous jury instructions, and juror and/or attorney misconduct in failing to disclose that an attorney for Appellees had represented a juror's son in an employment dispute. These same issues were raised to the trial court in KSP's motions for JNOV or new trial.

**STANDARDS OF REVIEW**

A trial court's rulings on motions for directed verdict, JNOV, and new trial must be reviewed with some deference. *See Jefferson v. Eggemeyer*, 516 S.W.3d 325, 337 and 337 n.9 (Ky. 2017) (indicating denial of motion for new trial is to be reversed only if clearly erroneous and/or an abuse of discretion and that same deferential standard applies to ruling on a motion for JNOV).

In contrast, issues about the content of the trial court's instructions given to the jury must be reviewed *de novo* – without deference – on appeal. *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 709 (Ky. 2020). However, the trial court's decision whether to grant a request to give a particular jury instruction is reviewed for abuse of discretion. *Id*. at 732-33. *See also Sargent v. Shaffer*, 467 S.W.3d 198, 203-04 (Ky. 2015), *overruled on other*

-4-

*grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112, 129 (Ky. 2021).

**Evidence was Sufficient to Submit Case to Jury, So Trial Court Did Not Err in Denying KSP's Motions for Directed Verdict and JNOV in its Favor**

Despite the somewhat deferential standard for reviewing the trial court's denial of KSP's motion for a new trial, we conclude that a new trial is required due to the trial court's giving erroneous jury instructions as we explain later. However, we reject KSP's argument that it was entitled to a directed verdict or JNOV based on insufficiency of the evidence presented. We decline to discuss the evidence in minute detail, but recognizing there are different perceptions of many events, we must focus on the evidence in favor of Appellees when determining whether the case was properly submitted to the jury.

Both a trial court ruling on a motion for directed verdict or JNOV and an appellate court reviewing a trial court's ruling on such motions must view the evidence in the light most favorable to the opposing party and make all reasonable inferences in the opposing party's favor in making their decisions. *See Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. App. 1985); *Belt v. Cincinnati Insurance Company*, 664 S.W.3d 524, 530 (Ky. 2022); *Louisville and Jefferson Cnty. Metropolitan Sewer District v. T+C Contracting, Inc.*, 570 S.W.3d 551, 576 (Ky. 2018). Furthermore, appellate courts must defer to the fact-finder's determinations

-5-

of the weight and creditability of the evidence when reviewing these trial court decisions about the sufficiency of the evidence. *Id*.

KSP asserts on appeal that the evidence was not sufficient to establish a *prima facie* Whistleblower Act claim.[1] But viewing the evidence of record in the light most favorable to Appellees and making all reasonable inferences in their favor, the trial court correctly determined that KSP was not entitled to a directed verdict or JNOV based on insufficiency of the evidence.

As noted in the trial court's instructions to the jury, key provisions of the Kentucky Whistleblower Act ("KWA") are set forth at KRS[2] 61.102 and KRS 61.103. The trial court quoted all of KRS 61.102, and quoted or paraphrased parts of KRS 61.103 related to the burden of proof and the definition of *contributing factor* in its introductory instructions about the KWA.

---

[1] Appellees argue that issues about entitlement to a directed verdict and/or JNOV or about the sufficiency of the evidence are not preserved for appeal because KSP failed to again move for a directed verdict after concluding its defense case. However, we will assume for the sake of argument that KSP's assertion that Appellees failed to establish a *prima facie* case was sufficiently preserved by KSP's motion for directed verdict after KSP's initial presentation of evidence and before the defense's evidentiary presentation commenced.

KSP explicitly argues only that Appellees failed to make a *prima facie* case and not that KSP was entitled to a directed verdict based on its showing by clear and convincing evidence that the disclosures were not material factors in any personnel action despite any *prima facie* case of reprisal. *See* KRS 61.103(3). So, we need not address whether, assuming a *prima facie* case was made, KSP may have nonetheless been entitled to a directed verdict based on the alternate ground that it presented clear and convincing evidence that disclosures were not material factors in its personnel actions.

[2] Kentucky Revised Statutes.

-6-

KRS 61.102 generally prohibits employers from taking actions against employees to discourage or punish good-faith reporting – or taking actions to support other employees' reporting – of actual or suspected violation of the law or other enumerated misconduct to appropriate authorities, subject to certain enumerated conditions.[3]

---

[3] KRS 61.102 states:

(1) No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the Executive Branch Ethics Commission, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence.

(2) No employer shall subject to reprisal or discriminate against, or use any official authority or influence to cause reprisal or discrimination by others against, any person who supports, aids, or substantiates any employee who makes public any wrongdoing set forth in subsection (1) of this section.

(3) This section shall not be construed as:

(a) Prohibiting an employer from requiring that an employee inform him or her of an official request made to an agency for information, or the substance of testimony made, or to be made, by the employee to legislators on behalf of an agency;

KRS 61.103(3)[4] provides that once the employee makes a *prima facie* case of reprisal by showing by a preponderance of the evidence that the disclosure was a contributing factor in a personnel action, the burden then shifts to the employer to show by clear and convincing evidence that the disclosure was not a material factor in the personnel action.

---

(b) Permitting the employee to leave his or her assigned work area during normal work hours without following applicable law, administrative regulations, rules, or policies pertaining to leave, unless the employee is requested by the Kentucky Legislative Ethics Commission or the Executive Branch Ethics Commission to appear before the commission, or by a legislator or a legislative committee to appear before a legislative committee;

(c) Authorizing an employee to represent his or her personal opinions as the opinions of his or her employer; or

(d) Prohibiting disciplinary or punitive action if an employee discloses information which he or she knows:

   1. To be false or which he or she discloses with reckless disregard for its truth or falsity;

   2. To be exempt from required disclosure under the provisions of KRS 61.870 to 61.884; or

   3. Is confidential under any other provision of law.

[4] KRS 61.103(3) states:

Employees filing court actions under the provisions of subsection (2) of this section shall show by a preponderance of evidence that the disclosure was a contributing factor in the personnel action. Once a prima facie case of reprisal has been established and disclosure determined to be a contributing factor to the personnel action, the burden of proof shall be on the agency to prove by clear and convincing evidence that the disclosure was not a material fact in the personnel action.

KRS 61.103(1)(b) defines *contributing factor* as any factor affecting a decision and describes how a presumption that a disclosure was a contributing factor might arise when a personnel action occurs shortly after a disclosure:

> "Contributing factor" means any factor which, alone or in connection with other factors, tends to affect in any way the outcome of a decision. It shall be presumed there existed a "contributing factor" if the official taking the action knew or had constructive knowledge of the disclosure and acted within a limited period of time so that a reasonable person would conclude the disclosure was a factor in the personnel action.

KSP contends that it was entitled to a directed verdict based on lack of evidence of an adverse action or qualifying disclosures. Despite KSP's argument that JNOV or a directed verdict was called for due to lack of evidence that any actual transfer or firing or demotion occurred, the Whistleblower Act broadly prohibits any acts or threats to use official authority to discourage, dissuade, or discriminate against those who disclose actual or suspected violation of the law to appropriate authority. *See* KRS 61.102(1). So, even though Taylor was not actually transferred and KSP claims transfer is not a disciplinary act under its policies, Taylor's testimony that Post 4 Commander Daniel White threatened to transfer him for speaking to the prosecutor and others about his concerns with the Ryan Johnson situation could broadly be construed as the threatened use of authority in a manner tending to discourage disclosure or discriminate against Taylor for making disclosures to appropriate authorities.

-9-

Similarly, Burton and Garyantes also testified to hearing White make threats at the September 2019 supervisors' meeting to make employees leave the post if they disclosed concerns about the Ryan Johnson incident to others. Construing this evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, this supports a finding of a threat to take action to dissuade or discriminate against those inclined to disclose to appropriate authorities actual or suspected violations of the law.

Similarly, viewing the evidence and drawing all reasonable inferences in the plaintiffs' favor, Garyantes' being ordered to leave the supervisors' meeting could be construed as an action aimed at dissuading him from supporting Burton and Taylor in their disclosing actual or suspected violations of the law to appropriate authorities. *See* KRS 61.102(2).

Even disregarding any assertions that Garyantes was unfairly investigated or unduly punished for his use of a modified service weapon and/or personal weapon in a 2018 critical incident, we conclude the trial court properly denied KSP's motion for a directed verdict or JNOV based on other evidence which would support findings of acts of reprisal or use or threatened use of official authority. This is particularly true as we must defer to the fact-finder's determinations about the weight and creditability of evidence, view the evidence in

the light most favorable to Appellees, and draw all reasonable inferences in their favor. *T+C Contracting*, 570 S.W.3d at 576.

In addition to rejecting KSP's arguments of insufficient evidence of adverse action, we also reject its arguments of insufficient evidence of qualifying disclosures to establish a *prima facie* case of Whistleblower Act violation. KSP argues the disclosures made were not protected under the Kentucky Whistleblower Act because all three plaintiffs conveyed second-hand information to others. But we are not aware of any statutory language or precedent prohibiting a Whistleblower Act plaintiff from recovering unless he or she was the first to discover or report the actual or suspected violation of the law or other enumerated misconduct. In fact, we have recognized that reporting second-hand information or "hearsay" may qualify as a protected Whistleblower disclosure if the employee acted in good faith by corroborating or confirming secondhand information or trying to discover first-hand knowledge before making the report. *See Thornton v. Office of Fayette Cnty. Attorney*, 292 S.W.3d 324, 330-31 (Ky. App. 2009). *See also Kearney v. University of Kentucky*, 638 S.W.3d 385, 408 (Ky. 2022) ("Depending on the circumstances, a repeated report up the chain of command or to another appropriate authority who could remedy the complaint may qualify as a disclosure.").

Certainly, however, otherwise protected disclosures of actual or suspected violations of the law or other misconduct such as waste or fraud may not be entitled to Whistleblower protection if the actual or suspected misconduct was already publicly known or **widely** known within the organization. *See, e.g.*, *Harper v. University of Louisville*, 559 S.W.3d 796, 802 (Ky. 2018). And considering the evidence in the light most favorable to Appellees and making all reasonable inferences in their favor, the evidence was sufficient to support a finding that they acted in good faith to report information which was not already publicly known or widely known within KSP. Even if a few others at Post 4 (such as Trooper Ethan Whitlock or Sgt. Bo Hensley) may have been aware of events such as Johnson's taking evidentiary items or White's response to this event before the three plaintiffs/Appellees here,[5] that does not necessarily mean that the alleged incidents were known to the public or widely known among KSP personnel.

KSP has not pointed to evidence of widely circulated media reports, for example, about the evidence room escapades or alleged cover-up surfacing before Burton, Taylor, or Garyantes discussed their concerns about these matters with the local Commonwealth's attorney or KSP officials in Frankfort. Viewing

_____

[5] Burton testified to learning about Johnson's taking items from the evidence room from Whitlock and Hensley when he took over the position of administrative sergeant in charge of the Post 4 evidence room from Hensley in September 2019.

the evidence in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, KSP was not entitled to a directed verdict or JNOV based on the disclosures being publicly known or widely known within KSP.

Similarly, KSP was not entitled to a directed verdict simply because some of the information conveyed may have been second-hand in nature. Clearly, there was evidence to support a finding that Burton acted in good faith by repeating to the prosecutor statements made by Hensley about Johnson's actions which had not previously been reported. Testimony also supported a finding that Taylor discussed concerns with the prosecutor about information reported to him which was not yet publicly known nor widely known within KSP. Appellees also offered testimony supporting a finding that Garyantes made a good faith report of suspected violation of the law by reporting to the prosecutor his being thrown out of the September 2019 supervisors' meeting for, in his view, making statements in support of Taylor's and Burton's disclosures.[6] *See* KRS 61.102(2).

---

[6] KSP correctly asserts that merely stating one's disagreement with a supervisor's position to the supervisor is not a protected disclosure under the Kentucky Whistleblower Act. *See generally Moss v. Kentucky State University*, 465 S.W.3d 457, 460 (Ky. App. 2014). Certainly, the Appellees stated their disagreements with White's positions to White and these statements of disagreement to White by themselves are not protected. However, Appellees also offered their own and the prosecutor's testimony which supports a finding that each Appellee reported concerns about actual or suspected violation of the law or other misconduct to the prosecutor or to KSP officials in Frankfort. Also, evidence of certain conduct – such as Garyantes' statements at the September 2019 supervisors' meeting – could be construed as either merely stating disagreement with one's supervisor's position or as aiding or supporting other employees' protected disclosures. We also recognize that others testified to perceiving Garyantes' behavior at the meeting as being loud and/or insubordinate and/or to believing Garyantes should not have been at the supervisors' meeting due to being on military leave at the time. Nonetheless, viewing

-13-

Even ignoring the testimony of retired Sgt. Alex Payne (and former

Deputy KSP Commissioner) – especially his testimony on rebuttal which KSP

argues was cumulative and served no real clear purpose,[7] the evidence was

sufficient to support a *prima facie* case for each plaintiff/now Appellee.

In short, we discern no reversible error in the trial court's denying

KSP's motions for directed verdict or JNOV based on the alleged insufficiency of

the evidence.  However, we must nonetheless reverse due to erroneous jury

instructions and remand for a new trial.

**KSP Preserved Jury Instruction Issue Through Tendering Jury Instruction Requiring Jury to Make a Finding that KSP Took Action Against Each Plaintiff as Part of Determining Whether a *Prima Facie* Case Was Made**

KSP argues on appeal that the trial court erred in not requiring the

jury to make a finding of "material, adverse action" against each plaintiff/Appellee

to return a verdict in favor of each plaintiff/Appellee.  As KSP points out, it

tendered proposed jury instructions to the trial court containing this requested

language.  However, the trial court's instructions were materially different from

---

the evidence and making all reasonable inferences in Appellees' favor and deferring to the jury's determination of the weight and creditability of the evidence, Appellees made *prima facie* cases of qualifying disclosures despite mere statements of disagreement to White not being protected disclosures.

[7] Because we reverse based on jury instruction error, we do not reach whether the trial court's admission of Payne's testimony constituted reversible error.  However, we suggest that to the extent possible, upon remand, the trial court and parties resolve prior to trial any issues about whether Payne should be allowed to testify as an expert or a lay witness and the scope of his testimony that will be permitted at trial especially concerning any opinions Payne might express.

those tendered by KSP.  KSP contends that the instructions given by the trial court allowed the jury to assume that KSP had taken action against each plaintiff/Appellee, instead of being instructed to make a finding of such action.

The Appellees contend the issue is unpreserved because KSP did not formally object to the instructions given by the trial court in addition to tendering KSP's own instructions.  However, the criminal cases it cites for this proposition apply rules of criminal procedure not applicable here.  *See, e.g.*, *Smith v. Commonwealth*, 370 S.W.3d 871, 875 (Ky. 2012); *Chumbler v. Commonwealth*, 905 S.W.2d 488, 499 (Ky. 1995) – both citing RCr[8] 9.54(2).

More importantly, the civil cases Appellees cite to argue KSP failed to preserve the jury instruction for appeal held that instructional errors were not preserved when there was neither an instruction tendered addressing the matter claimed necessary on appeal nor an objection to the final instructions given by the trial court.  *See generally Fraser v. Miller*, 427 S.W.3d 182, 186 (Ky. 2014); *Tillman v. Heard*, 302 S.W.2d 835, 837 (Ky. 1957).

These civil cases are consistent with CR[9] 51(3) which clearly indicates one can preserve a jury instruction issue by specifically raising the issue by tendered instruction **or** by objection **or** by motion:

---

[8] Kentucky Rules of Criminal Procedure.

[9] Kentucky Rules of Civil Procedure.

-15-

> No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

Recent precedent from our Supreme Court recognizes that tendered jury instructions are sufficient to preserve errors in jury instructions – unless the tendered instruction does not contain the omitted language or "the minor differences between the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error" or "the tendered instruction itself was otherwise erroneous or incomplete." *Disselkamp*, 600 S.W.3d at 709 (quoting *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 152, 163-64 (Ky. 2004)). We conclude that the instructions tendered by KSP in this civil case sufficiently preserved the argument that the jury should not be allowed to assume KSP had taken action against each plaintiff but must make a finding on this issue.

KSP's tendered instruction contained the "material, adverse" action requirement it complains the trial court erroneously omitted on appeal. Further, the tendered instruction should have called the trial court's attention to the alleged error in assuming some action against each plaintiff by KSP instead of requiring the jury to make an appropriate finding of such action. And although we conclude the specific "material, adverse" language of KSP's tendered instruction was not

-16-

required as we discuss later, KSP's tendered instruction required a finding of action against each plaintiff – in contrast to the trial court's instruction which assumed some action had been taken or threatened against each plaintiff. (*See* Record ("R."), pp. 748, 758, 767 – trial court's instructions on *prima facie* case requiring only the findings that: 1) KSP's handling of evidentiary items was an actual or suspected violation of law or other form of misconduct, 2) each plaintiff made a good faith disclosure, and 3) the disclosure was a contributing factor "in the decision to take or threaten to take a personnel action" against each plaintiff to discourage or punish disclosure.)

Furthermore, to the extent that the jury instruction error was not perfectly preserved, KSP has alternatively requested relief for unpreserved, palpable error. And we conclude that KSP is entitled to relief pursuant to CR 61.02. This is especially true since erroneous jury instructions are presumed to be prejudicial. *See Disselkamp*, 600 S.W.3d at 724 n.95.

**Reversal Required Due to Failure to Require Jury to Find Action or Threatened Action by KSP Against Each Plaintiff in Jury Instructions**

The trial court stated it welcomed guidance from appellate courts on proper jury instructions for alleged Whistleblower Act violations in its written order. And though we reverse due to the failure to require a finding of actual or threatened action by KSP to discourage or punish disclosure, we appreciate the trial court's efforts to both employ the language of controlling statutes and to

comply with precedent's calling for "bare-bones" jury instructions. *See Primal Vantage Company, Inc. v. O'Bryan*, 677 S.W.3d 228, 246 (Ky. 2022) ("[W]hile simple instructions are preferred, correct and complete instructions are required."); *see also Disselkamp*, 600 S.W.3d at 723 (recognizing that proper bare-bones instructions clearly set forth without unnecessary detail what the jury must find to return a verdict in a plaintiff's favor).

After its introductory instructions quoting KRS 61.102 and portions of KRS 61.103 about the burden of proof and definition of a contributing factor, the trial court provided instructions for the jury to determine whether each plaintiff had made a *prima facie* case. These instructions asked the jury whether it was satisfied from the evidence that KSP's handling of the evidentiary items at issue constituted an actual or suspected violation of the law or other misconduct; that the plaintiff had made a good faith disclosure; and that the disclosure was a contributing factor "in the decision to take or threaten to take a personnel action" against the plaintiff to discourage or punish disclosure.

The problem with these instructions is that they assume KSP had taken or threatened to take a personnel action against each plaintiff – and actual or threatened action against the plaintiff to discourage or punish disclosure is a key element of a Whistleblower Act violation which was not stipulated by KSP. *See Davidson v. Commonwealth, Dep't of Military Affairs*, 152 S.W.3d 247, 251 (Ky.

App. 2004) ("In order to demonstrate a violation of KRS 61.102, an employee must establish the following four elements: (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure.").[10]

Though better practice would have been for KSP's counsel to point out the lack of required finding of actual or threatened personnel action in the trial court's proposed final instructions, KSP's tendered *prima facie* case instructions required a finding of an action against each plaintiff on KSP's part and thus preserved this issue. Specifically, these tendered instructions required that the jury make a finding that: "KSP took materially adverse action(s)" or "materially adverse personnel actions" against each plaintiff to find in that plaintiff's favor.[11]

---

[10] The first two elements of a Whistleblower claim appear undisputed in this case: 1) that the employer was an officer of the state, and 2) that the employee was an employee of the state at the time at issue.

[11] KSP's tendered instructions also required findings that each plaintiff made, aided, supported, or substantiated good faith reports or disclosures of actual or suspected violations of the law or other misconduct and that disclosure was a contributing factor in KSP's decision to take "adverse personnel actions" against each plaintiff.

-19-

We decline to hold that the exact language incorporated in KSP's tendered instructions was required here. As Appellees point out, Whistleblower Act statutes (specifically KRS 61.102 and KRS 61.103) do not use this "material" and "adverse" language.

Recent precedent from this Court indicates that using different terms rather than those used in Kentucky Whistleblower Act statutes such as KRS 61.102 and KRS 61.103 in jury instructions can be reversible error. *See Williams v. Cabinet for Health and Family Services*, No. 2022-CA-0935-MR, 2024 WL 294346, at *10 (Ky. App. Jan. 26, 2024) (to be published; motion for discretionary review pending in Kentucky Supreme Court) ("[T]he trial court failed to instruct the jury to find Williams proved a 'personnel action' and instead instructed on the terms 'retaliation' and 'penalization' which do not appear in the KWA . . . KRS 61.103(3) clearly sets out the parties' burdens of proof using the term 'personnel action.' The repeated use of the irrelevant term 'penalization' at trial and again in the jury instructions along with 'retaliation' where the statute unambiguously uses 'personnel action' is an error demanding reversal.").[12] *See also id*. at *8-9

---

[12] *See also White v. Sanitation Dist. No. 1*, No. 2013-CA-000837-MR, 2014 WL 2795837, at *5 (Ky. App. May 30, 2014) (unpublished) (holding that trial court committed reversible error by instructing jury that "an adverse employment action" was required rather than the unqualified "personnel action" language used in KRS 61.103 which this Court construed as referring to a broad list of prohibited actions in KRS 61.102). We recognize this is unpublished opinion is not binding authority. *See* Kentucky Rules of Appellate Procedure ("RAP") 41(A). However, we find its reasoning persuasive. And we believe its holding is more persuasive in this context than that expressed in a non-binding unpublished federal court opinion, *see* RAP 41(B), which

-20-

(defining "personnel action" in the context of Kentucky Whistleblower Act to broadly "prohibit actions which might discourage an employee from making a good faith report or interfere with such a report" but also concluding a showing of materially adverse action was required to recover under the Whistleblower Act based on precedent construing Kentucky Civil Rights Act retaliation provisions).

Furthermore, as we previously noted, the Whistleblower Act expressly prohibits the employer's threatening to use official authority as well as actual use of such authority against the employee to discourage or punish disclosure. *See* KRS 61.102(1).[13]

---

construes a Kentucky Whistleblower Act claim as requiring proof of "material, adverse action" in reviewing a summary judgment ruling rather than an assertion of instructional error. *See Harper v. Elder*, 803 Fed. App'x 853, 857 (6th Cir. 2020) (not designated for publication).

[13] Perhaps some confusion inevitably arises because of the different terms used in KRS 61.102 and KRS 61.103. KRS 61.102(1) broadly prohibits reprisal or taking or threatening to take a broad range of actions with the aim of discouraging or punishing Whistleblower-type disclosures. But KRS 61.103(3) states the plaintiff who files suit under KRS 61.103(2) "shall show by a preponderance of evidence that the disclosure was a contributing factor in the personnel action" before stating that if the plaintiff makes a *prima facie* case, the burden then shifts to the employer to show by clear and convincing evidence that the disclosure was not a "material fact" in the personnel action being taken. Does this mean that employers are broadly prohibited from even threatening to take a wide range of actions, but that employees cannot obtain certain forms of relief (such as the injunctive relief or punitive damages mentioned in KRS 61.103(2)) unless some actual, not merely threatened, tangible personnel action occurred? Or does this mean that KRS 61.103(3) burden of proof provisions only apply to proving "reprisal" and not to other conduct prohibited by KRS 61.102? Interesting questions may be posed especially since terms such as "reprisal" and "personnel action" are not expressly defined by statute in Kentucky. *See Williams*, 2024 WL 294346, at *6 (noting lack of statutory definition of "personnel action"); KRS 61.101 *et. seq.*; KRS 446.010. Perhaps one could argue that *reprisal* is some form of tangible act of retaliation and not a mere threat to take such a tangible action. *See Reprisal*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("3. Any act or instance of retaliation, as by an employer against a complaining employee."). *See also Reprisal*, MERRIAM-WEBSTER ("1: a retaliatory act") (last accessed Apr. 18, 2014). But on the other

-21-

So, though we do not call for the exact language used in KSP's tendered instructions, upon remand we direct the trial court to fashion jury instructions requiring a finding that KSP took or threatened to take action against each plaintiff for each plaintiff to make a *prima facie* case. We suggest that appropriate instructions might incorporate the simple and clear language used in *Davidson*, 152 S.W.3d at 247, which describes the elements of a Whistleblower Act violation consistently with the language of KRS 61.102 and KRS 61.103.

For example, proper jury instructions in the instant case would require a finding that the employee made a good faith disclosure of actual or suspected violation of the law or fraud, waste, mismanagement, or abuse of authority, *see* KRS 61.102(1), or supported, aided, or substantiated another employee's good faith disclosure of such wrongdoing, *see* KRS 61.102(2). Next, the jury should be directed to find whether "the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure[,]" *Davidson*, 152 S.W.3d at 251, or for aiding, supporting, or substantiating another employee's disclosure. *See* KRS 61.102(2).

---

hand, KRS 61.102's title refers to "Reprisal against public employee for disclosure of violations of law prohibited" yet the text of this statute refers to reprisal and to various other actions (including making threats to use official authority) being prohibited – suggesting all actions or threats to use official authority mentioned in KRS 61.102 are forms of reprisal.

Then, the jury should be instructed to determine if the plaintiff employee showed that the disclosure was a contributing factor in the personnel action, and if so, whether the employer (here KSP) showed by clear and convincing evidence that the disclosure was not a material factor in the decision to take or threaten to take the personnel action. *See Davidson*, 152 S.W.3d at 251 (citing KRS 61.103(3)). If the jury does not find that KSP showed the disclosure was not a material factor in the personnel action, then the jury would next determine damages according to appropriate instructions.[14]

Certainly, we recognize the difficulty of fashioning jury instructions in these types of cases which reflect statutory requirements and comply with precedent calling for bare-bones jury instructions. Nonetheless, based on our review of the record and applicable law, we conclude KSP is entitled to a new trial with instructions requiring a finding of actual or threatened action on KSP's part to discourage or punish disclosure or supporting other employees' disclosure for the plaintiffs/Appellees to recover on Whistleblower Act claims.[15]

---

[14] Despite the failure to require a finding of actual or threatened action by KSP against the plaintiffs, the trial court's instructions in this case did reflect the burden of proof provisions in KRS 61.103(3). And neither party has asserted any errors in the trial court's jury instructions for determining damages.

[15] Such a finding is necessary in this case especially because KSP did not concede some form of prohibited action against each plaintiff/Appellee. Of course, different instructions may be needed in different cases based on which requisite elements of a claim are disputed.

**We Decline to Address Other Issues Raised in KSP's Appeal**

Because we reverse and remand for a new trial due to instructional error, we need not reach other arguments advanced in KSP's appeal. For example, we need not reach whether KSP was entitled to relief based on alleged juror and attorney misconduct. Presumably, the discovery during jury deliberations that a party's attorney recently represented a juror's adult child – with the same unusual name as the juror – in a dispute with an employer is unlikely to recur upon remand. Nonetheless, apparently neither the trial court nor the parties ever asked potential jurors whether they knew or recognized the parties' attorneys. We suggest that on remand, the trial court should inquire into whether prospective jurors know or recognize the parties' attorneys at the beginning of jury selection. We also suggest attorneys should review lists of prospective jurors and those selected to serve at trial as early as possible to timely discover and raise to the trial court any potential conflicts of interest or other concerning matters.

Other issues or arguments raised in the parties' briefs have been determined to lack merit or relevancy to our resolving KSP's appeal, No. 2022-CA-1028-MR. However, we next address the Appellees'/Cross-Appellants' motion to dismiss the Cross-Appeal (No. 2022-CA-1108-MR) regarding Beth Lewis Maze's alleged entitlement to attorney fees.

**We Dismiss the Cross-Appeal (No. 2022-CA-1108-MR) Upon Appellees'/Cross-Appellants' Motion**

The Appellees argued only one issue on Cross-Appeal in their combined appellee/cross-appellant brief – whether the trial court erred in not awarding attorney fees for Beth Lewis Maze. After appellate briefing was completed, Appellees filed a motion to dismiss the Cross-Appeal concerning attorney fees.[16] They stated Ms. Maze did not wish to pursue litigation about fees.

KSP did not file a response to the Appellees' motion to dismiss the Cross-Appeal about attorney fees. Another panel (motion panel) of this Court denied the motion to dismiss the Cross-Appeal, but the motion panel stated that the merits panel may revisit the matter.

We (the merits panel) disagree with the motion panel ruling denying the Cross-Appellants' motion to dismiss the Cross-Appeal about attorney fees and thus grant this motion to dismiss. *See Bowlin Group, LLC v. Rebennack*, 626 S.W.3d 177, 181 (Ky. App. 2020) (quoting *Commonwealth Bank & Tr. Co. v. Young*, 361 S.W.3d 344, 350 (Ky. App. 2012)) ("This Court retains authority to

---

[16] KSP had filed its own motion to dismiss the Cross-Appeal much earlier prior to the filing of the combined Appellee/Cross-Appellant brief. The basis of KSP's motion to dismiss the Cross-Appeal was that additional parties were named in the Notice of Cross-Appeal who had not been named in the Notice of Appeal. In the alternative, KSP requested that the additional named parties in the Notice of Cross-Appeal (attorney Maze for the Appellees and attorneys Shawna Kincer and Samantha Bevins for KSP) be dismissed as parties. In a March 2023 order, we denied KSP's motion to dismiss the Cross-Appeal, but we granted its motion to dismiss attorneys Maze, Kincer, and Bevins as parties.

review decisions on motion panel that do not finally dispose of the case when the case is considered by a full-judge panel to which it is assigned.").

We see no reason to reach the merits of this attorney fees issue as Ms. Maze and the Cross-Appellants no longer wish to seek to overturn the trial court's denial of attorney fees for Ms. Maze. KSP did not file an objection to the Cross-Appellants' motion to dismiss their Cross-Appeal and had previously filed its own motion to dismiss the Cross-Appeal – albeit on different grounds. Furthermore, Appellees cited no authority to support their attorney fees argument in their appellate brief. And it is not our job to research and argue issues for the parties. *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005).

Thus, we dismiss the Cross-Appeal about attorney fees.

## CONCLUSION

For the reasons stated herein, we REVERSE and REMAND for a new trial. Furthermore, the Cross-Appeal concerning attorney fees shall be, and hereby is, DISMISSED upon the Cross-Appellants' motion.

ALL CONCUR.

ENTERED: ___05/10/2024___    _____
                                        JUDGE, COURT OF APPEALS

-26-

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Lauren Lewis
Frankfort, Kentucky

BRIEF FOR APPELLEES/CROSS-APPELLANTS:

Thomas E. Clay
Kirsten R. Daniel
Louisville, Kentucky